# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| SALY GIBBS,<br>        Plaintiff,<br><br>    v.<br><br>FAMILY CARE CENTER OF INDIANA, LLC<br>d/b/a MEDICAL SPECIALISTS CENTERS<br>OF INDIANA and DR. ALEX STEMER,<br>        Defendants.<br><br>FAMILY CARE CENTER OF INDIANA, LLC<br>d/b/a MEDICAL SPECIALISTS CENTERS<br>OF INDIANA and DR. ALEX STEMER,<br>        Counter-Plaintiffs,<br><br>    v.<br><br>SALLY GIBBS,<br>        Counter-Defendant, | CAUSE NO.: 2:09-CV-385-WCL-PRC |

## OPINION AND ORDER

This matter is before the Court on a Motion to Compel [DE 46], filed by Plaintiff/Counter-Defendant Sally Gibbs on January 27, 2011; a Motion to Compel [DE 47], filed by Gibbs on February 3, 2011; and an Agreed Motion to Amend Expert Discovery and Dispositive Motion Deadlines [DE 57], filed by Gibbs on February 24, 2011. Defendants/Counter-Plaintiffs Family Care Center of Indiana, LLC d/b/a Medical Specialists Centers of Indiana ("FCCI") and Dr. Alexander Stemer filed a response in opposition to the Motion to Compel on February 10, 2011. Gibbs filed a reply in support on February 17, 2011. Gibbs seeks an order of the Court requiring Defendants to produce materials responsive to Request No. 6 of Plaintiff's Second Request for Production of Documents.

## BACKGROUND

### A. Gibbs' Allegations

In Count IV of her Complaint, Gibbs alleges that Defendants wrongfully terminated her employment in retaliation because she (1) voiced her opposition to "Stemer's plans to obtain higher Medicare reimbursement rates by falsifying medical records and by billing for services that were not actually provided;" and (2) "refused to participate in conduct by [Defendants] which would have constituted Medicare fraud." Compl. p. 4 ¶ 16, p. 8 ¶ 34. Gibbs alleges that, in the Spring of 2008, Medicare audited several of the physicians practicing at FCCI with respect to their billing practices for visits with existing patients in 2007. Among other things, Medicare, as part of its audit, requested that FCCI turn over charts for certain visits conducted by these physicians.

In response to the Medicare requests, Gibbs claims that Dr. Stemer proposed that FCCI change or supplement the requested charts to include additional information that would support the billing code submitted to Medicare for that visit, but not indicate or designate on the chart that a supplementation or change had been made after the fact. Gibbs asserts that she objected to this proposed conduct and demanded that any change to the existing chart be disclosed, initialed, and dated.

Gibbs further claims that, in response to this and other audits by Medicare, Dr. Stemer conceived of a new program to be implemented by FCCI called the "Patient Care Coordinator Program." Gibbs alleges that Dr. Stemer's motivation for the implementation of this program was to avoid Medicare scrutiny of FCCI's alleged practice of "up-coding," i.e. billing the highest applicable code levels to the majority of its patients' visits regardless of the medical need for the services rendered during the visits. According to Gibbs' allegations, Dr. Stemer sought to accomplish this goal via the Patient Care Coordinator Program by requiring automatic follow-up visits which would be billed at a pre-determined lower Medicare billing code. As a result of such a program, Medicare,

when it reviewed Defendants' billing patterns, would not discover that the majority of FCCI's patient visits were billed at the highest applicable levels and thus would not audit FCCI physicians. Gibbs claims that on several occasions she objected to Dr. Stemer's proposed program for a number of reasons including: (a) the program provided for non-clinical persons to conduct the automatically scheduled patient visits; and (b) required that certain Medicare billing codes would always be applied to the automatically scheduled visits regardless of the medical necessity of the visit or the nature of the services provided during the visit.

### B. Gibbs' Discovery Requests Relevant to the Instant Motion

On March 10, 2010, Gibbs served her First Request for Production of Documents on Defendants. In Request No. 10, Gibbs requested:

> All documents that refer, reflect or relate to any audit or review conducted in connection with Medicare reimbursements that were made to Medical Specialists in 2007 and 2008, including but not limited to any medical charts or other information that was submitted to Medicare by Defendants in that time period. Patient identification information should be redacted from the documents that are produced in response to this Request.

Pl. Br., Exh. C, p. 4-5. On June 30, 2010, Defendants served their Responses to Plaintiff's First Request for Production of Documents. In response to Request No. 10, Defendants initially objected to the request as "overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence and it seeks confidential and proprietary information." Pl. Br., Exh. D, at p. 5. After counsel for Gibbs provided specific detail as to the audit that was the subject of Request No. 10, Defendants agreed to produce documents in Response to Request No. 10 and did so on November 11, 2010.

In December 2010, Gibbs' counsel deposed several representatives of FCCI who participated in FCCI's response to the audit that underlies Gibbs' claims in Count IV and that was the subject of

3

Request No. 10. As a result of these depositions, Gibbs learned that Defendants had not turned over all documents responsive to Plaintiff's Request No. 10. In particular, Gibbs learned that in response to Medicare's 2008 audit request, Defendants had submitted original charts, dictations of those charts prepared by FCCI physicians, and summaries of the histories of the patients who were the subject of the charts. Gibbs represents that none of these documents were produced by Defendants even though these documents had been turned over to counsel for Defendants prior to these depositions. Gibbs also learned that FCCI had received a response or a "demand" letter from Medicare in response to FCCI's submission of materials that reflected Medicare's conclusion as a result of its review of the submitted materials. None of these materials were produced by Defendants. Gibbs then learned that FCCI had disagreed with and thus appealed Medicare's findings as set forth in these "demand" letters. Defendants did not produce any materials relating to these appeals in response to Request No. 10.

Even though Gibbs believes that all of these materials were responsive to Request No. 10 and should have been produced, for clarity Gibbs served a Second Set of Request for Production of Documents on Defendants in November 2010, of which Request No. 6 seeks: "All documents submitted to or obtained from Medicare related to the 2008 audit of Family Care Center of Indiana, LLC's physicians, including but not limited to any and all documents related to any appeals of Medicare determinations stemming from the 2008 audit." Pl. Br., Exh. I, p. 2.

On January 19, 2011, Defendants served their Answers to Gibbs' Second Request for Production of Documents. In response to Request No. 6, Defendants refused to produce any documents. Defendants initially refused to produce documents in response to Request No. 6 because it was "too vague and ambiguous to permit a meaningful response" because the audit in question was "unspecified" and "unknown." *Id*. Gibbs argues that this objection was not made in good faith given

4

that the audit which was the subject of Request No. 6 had been the subject of discovery efforts by Gibbs throughout the case, including Gibbs' initial written discovery Request No. 10 and the depositions of multiple FCCI employees.

Counsel for Gibbs sent Defendants a letter pursuant to Federal Rule of Civil Procedure 37(a)(1), providing detailed information relating to the audit of which counsel had learned during the course of deposing Defendants' employees. In response, Defendants continue to object on the basis that the materials sought are beyond the scope of discovery in this case.

## ANALYSIS

Gibbs argues that Defendants' objection is meritless and that Defendants should be compelled to produce documents responsive to Request No. 6. First, Gibbs argues that Defendants have waived the objection to the relevance of the materials because Defendants have already produced documents purportedly relating to this same audit in response to Request No. 10 of the first production requests. Second, Gibbs argues that the materials requested by Request No. 6 are discoverable under the broad scope of relevant discovery set forth in Rule 26. Gibbs seeks a response to Request No. 6 that includes, but is not limited to, (1) the initial letter from Medicare to each physician requesting documentation; (2) all materials provided to Medicare in response (including but not limited to charts, dictations, and summaries); (3) the originals of those medical records; (4) all documents relating to Margaret Skurka's scoring of the charts that were the subject of the audit request; (5) Medicare's response to Defendants' submission; (6) all documents relating to any appeals by Defendants of Medicare's response; and (7) all communications relating to any of the above.

Defendants first attempt to defeat the Motion to Compel by arguing the substantive merits of Gibbs' retaliatory discharge claims and of their own Counterclaims. Defendants argue that Gibbs'

5

retaliatory discharge claim twists and distorts the preliminary and exploratory conversations Dr. Stemer had with his practice as to how best to conform to Medicare's billing expectations. Defendants argue that Gibbs, through a series of admissions made during her deposition, acknowledged that she cannot make the showing required to assert a claim for retaliatory discharge. Defendants assert that Gibbs admitted that she never participated in any unlawful practice and that she was never asked to do so and that she testified that she does not know if Defendants ever implemented any of the ideas. Defendants also note that Gibbs has yet to identify any law that would have been violated by the practices she allegedly opposed. Defendants contend that each of Gibbs' admissions negate an element required to assert a claim for retaliatory discharge under Indiana law.

However, the motion before the Court is neither a Rule 12(b) motion to dismiss nor a Rule 56 motion for summary judgment, and the Court will not decide the merits of this case on this discovery motion. The pertinent inquiry on a motion to compel is whether the discovery is relevant to any party's claim or defense, as set forth in Federal Rule of Civil Procedure 26(b):

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b). A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. *See* Fed. R. Civ. P. 37(a)(2)-(3). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Gregg v. Local 305 IBEW*, 1:08-CV-160, 2009 WL 1325103, at *8 (N.D. Ind. May 13, 2009) (quoting *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006)); *see also BASF Catalyst LLC v. Aristo, Inc.*, No. 2:08-CV-228, 2009 WL 187808, at *2 (N.D. Ind. Jan.

23, 2009) ("[A] party objecting to a discovery request bears the burden of sustaining its objections.") (internal quotation marks omitted).[1]

Defendants are correct that general fishing expeditions into areas *unrelated* to a plaintiff's claims are not permitted under Rule 26(b). *See Sirazi v. Panda Express, Inc.*, No. 08-CV-2345, 2009 WL 4232693, at *3 (N.D. Ill. Nov. 24, 2009). However, as Gibbs' retaliatory discharge claim in Count IV of her Complaint has not been dismissed, any discovery sought relevant to that claim is discoverable.

Therefore, the Court turns to Defendants' second argument, which is that the documents requested by Gibbs are not relevant to her retaliatory discharge claim. As set forth above, in Count IV of her Complaint, Gibbs alleges that she was fired in retaliation for (1) voicing her opposition to "Stemer's plans to obtain higher Medicare reimbursement rates by falsifying medical records and by billing for services that were not actually provided;" and (2) "refus[ing] to participate in conduct by [Defendants] which would have constituted Medicare fraud." Compl. p. 4 ¶ 16, p. 8 ¶ 34. The Indiana Supreme Court has recognized, in the context of a retaliatory discharge claim, that "firing an employee for refusing to commit an illegal act for which [she] would be personally liable is as much a violation of public policy declared by the legislature as firing an employee for filing a workmen's compensation claim. A separate but tightly defined exception to the employment at will doctrine is appropriate under these facts." *McClanahan v. Remington Freight Lines*, 517 N.E.2d 390, 393 (1988); *see also Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 710 F. Supp. 2d 762, 776-77 (N.D. Ind. 2010) (discussing this exception to the employment at will doctrine under Indiana law).

---

[1] Defendants are correct that the burden is on the moving party to prove that the opposing party's answers are incomplete. *See* Def. Br., p. 8 (citing *BASF Catalyst LLC v. Aristo, Inc.*, No. 2:08-CV-228, 2009 WL 187808, at *2 (N.D. Ind. Jan. 23, 2009)). However, there is no dispute in the instant matter that Defendants' answers were incomplete because Defendants declined to answer altogether.

7

In Request No. 6, Gibbs seeks documents submitted by Defendants to Medicare and by Medicare to Defendants in relation to a Medicare audit that was the subject of Gibbs' objections to Dr. Stemer's proposals in 2008. If alterations were made to the records submitted as part of the Medicare investigation, those alterations may support Gibbs' allegations of the proposals that she opposed prior to her termination and which she argues are the basis of her termination. Given that Defendants strongly deny that they ever even explored the idea of changing or supplementing the charts submitted in connection with the Medicare audit, there appears to be a factual dispute about whether such a scheme to alter medical charts from 2007 in response to the 2008 audit was proposed. The documents Gibbs requests, including the documents submitted to Medicare as well as the original medical charts, would reflect whether or not changes were made to the charts. Defendants reason that, the records at issue, which relate to services that were rendered and billed in 2007 have no possible relevance or connection to Gibbs' alleged complaint of "potential Medicare fraud" made in March 2008. However, these 2007 documents are the very records that Gibbs alleges Dr. Stemer proposed be altered as part of the 2008 Medicare inquiry.

Gibbs asserts that the documents sent by Medicare to Defendants containing Medicare's findings of the audits are relevant to Dr. Stemer's alleged plan to implement a program that utilized automatically scheduled visits at pre-determined billing levels. Defendants respond that, first, the results of the audit were not received until after Gibbs' termination and, therefore, cannot be relevant to Dr. Stemer's motivation for proposing the program that Gibbs claims she complained about. Defendants further respond that the results of the audit are not relevant or admissible as to the reason for her termination because the results were unknown at the time of her termination. However, Gibbs' alleges that she opposed a plan of Dr. Stemer's to "up-code," and the results of Medicare's 2008 audit

may lead to the discovery of admissible evidence relating to the alleged practice of "up-coding." Also, whether any of the alleged proposed plans did in fact violate Medicare is a dispositive issue inherent in the retaliation claim that is not controlling of this discovery inquiry. Finally, the Court notes that Defendants have previously produced documents related to the 2008 audit in relation to Request for Production No. 10 of Gibbs' First Request for Production of Documents without objecting to the relevance of the discovery.

Accordingly, the Court finds that the discovery sought in Request No. 6 of Gibbs' Second Request for Production of Documents is relevant to her claim of retaliatory discharge, including, but not limited to (1) the initial letter from Medicare to each physician requesting documentation; (2) all materials provided to Medicare in response (including but not limited to charts, dictations, and summaries); (3) the originals of those medical records; (4) all documents relating to Margaret Skurka's scoring of the charts that were the subject of the audit request; (5) Medicare's response to Defendants' submission; (6) all documents relating to any appeals by Defendants of Medicare's response; and (7) all communications relating to any of the above.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Motion to Compel [DE 47], **DENIES as moot** the Motion to Compel [DE 46], and, in light of this ruling, **GRANTS** the Agreed Motion to Amend Expert Discovery and Dispositive Motion Deadlines [DE 57].

The Court **ORDERS** that Defendants shall provide, consistent with this order, documents responsive to Request No. 6 of Gibbs' Second Set of Request for Production of Documents, on or before **March 25, 2011**.

The Court **ORDERS** that the following deadlines are extended: (1) Plaintiff's expert witness disclosures deadline extended to **April 22, 2011**; (2) Defendants' expert witness disclosures deadline

extended to **June 6, 2011**; (3) the expert discovery deadline is extended to **July 6, 2011**; and the dispositive motion deadline is extended to **August 5, 2011**.

SO ORDERED this 7th day of March, 2011.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT

cc: All counsel of record